GRISER *v.* WORLEY.

4-5838                                        138 S. W. 2d 88

Opinion delivered March 18, 1940.

*M. F. Elms,* for appellant.

*W. A. Leach,* for appellee.

GRIFFIN SMITH, C. J.  Reduced to its quintessence the question before us is, Did C. E. Worley in 1931 unconditionally obligate himself when he said to Louis J. Weiser in respect of rented lands ". . . all I can possibly do is to try and pay taxes on the place."

The statement, unexplained, might be construed as an agreement contingent upon ability to pay. It becomes necessary, therefore, to show relationship of the parties.

Weiser, now dead, was a citizen of Indiana. He owned 160 acres of land in Arkansas county. In 1926, under written contract, the farm was rented to Mrs.

C. E. Worley for three years at $300 annually. In 1928 the arrangement was extended to cover 1929, 1930 and 1931.

During August, 1931, Weiser was in Arkansas inspecting his property. He attended a picnic at Preston Ferry accompanied by Worley and others. Stopping by the farm, there were discussions relating to past-due rents. According to Worley, whose testimony is corroborated by his two daughters, Weiser was informed that the land was infested with coffee beans and indigo weeds. Worley claimed to have invested $1,500 in pumping machinery and other equipment. Weiser consented to accept such installation in satisfaction of the sum due him.

Worley contends that in consequence of the conversations Weiser was informed that he (Worley) could not continue renting the place as formerly:—"All I could possibly agree was to try and pay taxes on the place." He quotes Weiser as replying: "Since you have improved the place as you have—have kept the land up and in better shape than it has been in since I owned the farm—I am willing to have you stay on it, but I do think you should try to keep the taxes up if at all possible, so that I will be out no expense. I would rather have the farm used and kept up than idle."

Worley says he then explained to Weiser that possession would be surrendered at any time requested, to which Weiser replied: "I know that; but I don't imagine there will be a change until prices come back and I sell the place."

It seems to have been conceded that Mrs. Worley's contract was for her husband. When the instant suit was brought Mrs. Worley and Weiser were dead. Victor L. Griser as administrator with the will annexed, and as sole beneficiary, sued Worley in circuit court for $324.58, representing taxes paid by Weiser for 1931-1936, inclusive. The action was transferred to chancery and on hearing was dismissed by the court. Griser has appealed.

The Weiser lands adjoined a farm owned by Worley. The latter testified that after 1930 he subleased

the Weiser property, supplying water and seed rice and receiving half of the crops. In 1936 2,300 bushels of rice were grown on 40 acres. Worley thought his wife paid the annual rental of $300 under the 1926 contract and its extension for three or four years. This is unimportant except that it sheds light on rental value of the land.

In November, 1932, Worley wrote Weiser, lamenting conditions. Stem rot had prevailed during the preceding year, and although 4,000 bushels of rice were produced, it sold at 27c.—"This year we had a better crop, but the price is only from 35c to 40c . . . If I could get 60c I could send you some money, but at the present price it takes all to pay the expense." There was the further statement: "Anything over 50c and a fair crop I will send you some money."

Appellee says he made an effort one year after 1931 to pay taxes, but found they had been discharged by Weiser.

By letter of March, 1935, appellee again expressed his regrets: "The last two years we have received a better price by reducing acreage 30 per cent. The best year's crop brought 60c to 90c per bushel. . . . I thought I would have enough [money] to send you a little, but am very sorry I did not."

During April, 1935, Weiser wrote appellee, returning with his indorsement a $60 check appellee had received covering fire loss. Weiser said: "I note you said in your letter it would cost $40 to make the repairs. I think it would be best for you to use the $60 and make such repairs as you think necessary."

Worley says that in his discussions with Weiser in August, 1931, he said to Weiser: "I can't remain on the place any longer with rice the price it is now. I will simply have to cancel that contract. I would agree to farming the place—keeping the land in condition by pulling coffee beans and other weeds." This statement was followed by the offer to "try and pay the taxes."

Appellee's daughter Ruby testified that she prepared a written statement of facts. It was made an

exhibit to her father's deposition. Quoted conversations are from the exhibit. Ruby also testified that her father ". . . agreed that he would try to help pay taxes on the land so Mr. Weiser would not be out any money."

If Weiser was not to be out any money, Worley's promise was unconditional. Mrs. Marie Gartner (another daughter) testified that Worley agreed ". . . to try to pay some of the taxes if he got a better price for the rice."

In explanation of his single effort to pay taxes Worley testified: "When I agreed to pay the taxes and found Weiser had paid them, I considered Weiser did not consider that I was to pay any taxes; that he got reimbursed enough by taking that machinery and in the work I did in caring for the property."

The testimony is inconsistent. Mrs. Greer says her father was to pay "some of the taxes." Worley claims discharge through Weiser's acts in paying the taxes—conduct which gave rise to appellee's belief that Weiser was not holding him responsible. Appellee suggested the deal whereby the old debt was discharged by permitting Weiser to retain the personal property. It could not, therefore, be "considered" as consideration for the new contract; neither could it be the means of discharging it.

That Weiser paid the taxes directly to the collector and expected reimbursement from Worley seems clear. This construction is borne out by expressions in Worley's letters explaining why money had not been sent. He did not mention a conditional obligation.

If it be conceded that Weiser needed the assistance and supervision of Worley, it is equally certain that Worley's interests and conveniences were served through availability of the contiguous lands.

Appellant at trial was faced with the difficulty of proving transactions engaged in by a man whom death had silenced. Inadmissibility of statements attributed to Weiser is not urged.

Worley's letters are evidence that there was an obligation. The comments (though fragmentary) when considered with other testimony and with the circumstances and apparent purposes of the principals, furnish evidence which preponderates in appellant's favor and justify a finding that there was an unconditional agreement to pay taxes.

The decree is reversed. Judgment is given here for the six items identified in the stipulation aggregating $324.58. Interest is allowed on each item from October 1 of the year when the tax fell due. Such interest (not compounded) amounts to $82.98 to May 4, 1939—date of the decree. The total judgment for $407.56 is to draw interest from the decree. It is so ordered.